### In re BOLAND.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

ATTORNEY AND CLIENT—DISBARMENT—GROUNDS—CRIMES.

    An attorney who bribed an assistant clerk of the court to so act in the performance of his official duties as to secure the release without trial of a person charged with crime, for whom the attorney appeared, and the release from liability of clients who were bail, must be disbarred, though he turned state's evidence in a prosecution of the assistant clerk for the offense, and was thereby relieved from a criminal prosecution.

Proceeding to disbar Frank A. K. Boland, an attorney. Judgment of disbarment.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Walter Alexander, for petitioner.
David McClure, for respondent.

PER CURIAM. The relation between the respondent, who was a member of the bar, and one Mase, who was an assistant to the clerk of the Court of Special Sessions, and the deposition made by the respondent in a criminal proceeding against Mase before a magistrate having been brought to the attention of the association of the bar, it presented the matter to the court. The respondent submitted an answer, and it is upon that answer that the proceeding is disposed of. The respondent appeared before Magistrate Crane in the City Magistrate's Court, and at the request of the district attorney made a deposition in a criminal prosecution against Mase. A copy of that deposition is annexed to the petition of the association of the bar, and that the

respondent swore to that deposition is admitted. The respondent also admitted in his reply to the association that this deposition contained a true statement concerning the matters therein set forth. By the respondent's answer to the court, it appeared that he was admitted to practice on the 19th of July, 1895, as an attorney and counsellor at law in the courts of this state, and since that time has been engaged in the active practice of his profession in the city of New York; that in the spring of 1906 two informations against Holmes were filed in the Court of Special Sessions; that the trial of Holmes was adjourned from time to time to the 8th day of October, 1906, on which day the respondent appeared therein under a retainer by Holmes' sureties as appearing for Holmes, presented to the court a letter from Holmes to one of the sureties and requested an adjournment of the trial, whereupon the court on the respondent's motion adjourned the trial to November 2, 1906; that on the 8th day of October, 1906, or shortly thereafter, Herbert Mase, an assistant to the clerk of the Court of Special Sessions, whom the respondent had known for some time, asked the respondent what he intended to do with these cases, and respondent replied that he intended to try them; that Mase then told the respondent that on a previous occasion the court had expressed its intention to discharge the bail or dismiss the cases because of the failure of the people to have sufficient evidence; that he would be glad to help the respondent in the cases, and added that he (Mase) had had the cases adjourned until November 22d, instead of November 2d; that, if the respondent should be unable to secure the presence of Holmes on that date, respondent should let Mase know, and he could probably be of assistance to him; that up to this time no reference had been made by or to said Mase in relation to the payment of any money to him or any other person, nor did Mase mention how or in what manner an adjournment of the case had been had or in what manner he could help the respondent, but respondent assumed that such adjournment had been obtained in the regular and ordinary way under the order of the court; but Mase had stated to the respondent that he (Mase) had had the cases adjourned; that on another occasion prior to November 22, 1906, when respondent was in the courtroom, Mase asked respondent how he was getting along with these cases, and again suggested that, if he (Mase) were notified in advance of the trial, he might be of some help to the respondent, and from this inquiry and the suggestion respondent assumed that Mase referred to the possibility of another adjournment being sought, and that it might be probable that Mase might be of assistance in obtaining an adjournment. We have thus the respondent's own statement that Mase had told the respondent that he had procured the adjournment of the cases from November 2d to November 22d, and that Mase had suggested that he could be of assistance in obtaining a further adjournment if one was desired by the respondent. So there was present in the respondent's mind the desirability of obtaining Mase's assistance of a further adjournment of the trial of the criminal charge against Holmes. Subsequent to this last interview, and in the early part of November, Mase met the respondent in the court building, and while speaking of the cases said that for his assistance to respondent in the cases he

ought to have $200 if the bail should be discharged, and added that he (Mase) would have to see another party. Respondent says in his answer that he made no promise of any money, or gave Mase any intimation of any disposition on respondent's part to pay any money. It is not pretended, however, that the respondent refused to entertain the proposition or repudiated the idea, which seems to have been clearly in the minds of both parties, that for such assistance as Mase should render to the respondent he was to receive compensation. The respondent then states that on or about the 22d of November, 1906, the date to which respondent had understood the trial of the cases had been adjourned, the respondent appeared in court, and was told by Mase that the court had discharged the bail in the cases, and, when respondent asked how that had occurred without the usual notice to the sureties, Mase said that the cases had been ordered on the calendar for an earlier day than November 22d; that Mase did not tell respondent, nor did respondent have any knowledge or information or expectation of any kind, that the placing of the cases on the calendar in advance of November 22, 1906, and the discharging of the bail by the court had been accomplished in any way except in the regular manner and by the court's direction. But the respondent knew that, although the cases had been set down for trial by the court for November 22, 1906, the cases had been ordered on the calendar for an earlier date than November 22d without any notice to the sureties; and this statement of Mase was followed by a demand by Mase for a payment of the $200, "for his assistance in the cases." Mase, at that time, said he thought he ought to have $200, and respondent thereupon asked Mase if he would be satisfied with $150, to which Mase assented. Respondent paid him $10 on that day, and on another day gave him $140; both payments being made at the court building in which the court was held of which Mase was an assistant clerk. The respondent says that at no time did Mase tell respondent that Mase could or would get the bail discharged, provided the money was paid; but Mase, an assistant clerk of the court, had tendered his assistance to the respondent and demanded for such assistance the payment of $200, and, when, by a method which on its face appeared irregular, Mase announced to the respondent that the person charged with the crime had been discharged on his own recognizance and the sureties released, the respondent without demur or objection paid Mase $150, which was one-half of the fee that he had received from his clients.

The respondent further states in his answer that he did not at any time enter into an arrangement or understanding with Mase whereby any improper action whatever was to be taken by or for him or any other person in connection with the cases, nor was any such action hinted at, and his sole object in making payment of the money which was paid to Mase was to meet the demand of Mase for compensation for what respondent deemed to have been a friendly interest in the matter. Why the respondent should have deemed it advisable or proper to pay to a clerk of the court one-half of the fee that he had received in the case for defending a person charged with the commission of a crime is not explained, and there can be but one conclusion drawn from the respondent's own statement: That Mase, a clerk of the court,

offered to assist the respondent in relation to the trial of this person or the proceedings preliminary to the trial, and for this assistance Mase would expect to be paid a sum of money by the respondent, and that the respondent upon what was considered to be the termination of the proceedings and the release of his 'clients from the obligation as bail paid to Mase, the clerk, $150.

A copy of the deposition of the respondent before the magistrate, to which allusion has been made, is annexed to the petition of the association of the bar. In that deposition the respondent testified that while respondent was in the courtroom, or immediately outside thereof, on the 8th of October, 1906, one Herbert Mase, to the respondent known to be an assistant to the said clerk of the Court of Special Sessions, came to respondent, and asked him what he intended to do about the criminal cases, to which reference had been made; that Mase said they were serious cases, and he doubted whether the respondent could get Holmes out upon a trial; that instead of marking the cases for November, 2d, as directed by the court, he had marked them to be placed upon the calendar on November 22, 1906; that subsequent to that occasion Mase spoke to the respondent about the cases several times, saying that, if the respondent could not get the defendant back, to let him know, and that he might be able to help respondent out; that on or about October 20th the respondent received a fee of $300 from Holmes' sureties; that subsequently Mase again came to respondent, and said that he wanted $200 from respondent, that he would get the bail discharged in the cases, that he had to see another party, and thought he would have the bail discharged provided the money was paid; that on or before November 22d Mase told the respondent that the court had discharged the bail in the case of Holmes; that the respondent told Mase that respondent had received $300 as a fee in the case, and asked Mase if he would be satisfied to take half of it, to which Mase agreed; that Mase said, "I have got to see this other party right away, and he wants the money"; that respondent had only a few dollars with him at the time, and then gave Mase $10; that this occurred on the second floor of the Criminal Court Building just outside the clerk's office; that two or three days later respondent was either in the courtroom of the Court of Special Sessions or outside in the corridor, when Mase again came to respondent, and asked respondent if he had the balance of the money; that respondent said he had, and that he would get it and give it to Mase before he left the court that day; that later on Mase and the respondent went out to the main floor on the north side of the building, and the respondent then and there gave Mase the additional $140.

The respondent stated in his communication to the association of the bar that this affidavit "contains a true statement concerning the matters therein set forth." In his answer in this proceeding he states:

"While in the affidavit of respondent, verified December 28, 1906, a statement appears to the effect that said Mase, instead of marking the cases for November 2d as directed by the court, he had marked them to be placed upon the calender upon November 22, 1906, such statement is not exactly correct. The affidavit was made at a time when respondent had before him certain court records in the cases and other facts which had been shown to him by a

representative of the district attorney who had investigated the cases, and from which, for the first time, respondent concluded that such marking had been done by Mase himself. But Mase, when speaking to respondent about the adjournment, distinctly stated that he had had the cases adjourned."

And the answer also says:

"The statement in said affidavit with reference to the payment of money and discharge of bail does not correctly state the actual facts."

But in these two instances only does the respondent state that the affidavit is not correct.

It is difficult to exaggerate the seriousness of this charge. The respondent in his answer calls it an "error of judgment," and that may be admitted, as it would appear to be an error of judgment for any one to commit a crime.

When an attorney and counsellor at law who is an officer of the court directly pays the clerk of the court a sum of money for such "assistance" that he had rendered, but one conclusion can be drawn; and that is that both parties to this transaction were guilty of bribery. Looking upon this answer, as we think we are required to do, as a practical confession by the respondent of having successfully bribed an assistant clerk of the Court of Special Sessions to so act in the performance of his official duties as to secure the release without trial of a person charged with a crime for whom the respondent appeared as counsel, and the release from liability of his clients who were bail, there would seem to be but one result that could follow, which is that the person thus guilty should no longer be allowed to be a member of the bar. We are earnestly asked by the learned counsel for the respondent to relieve the respondent from the extreme penalty because of the fact that he made a disclosure of his connection with this crime to the district attorney, and made a deposition to be used in a criminal proceeding against the clerk. But there is no claim that the respondent made any such disclosure until after the facts had come to the knowledge of the district attorney, and an investigation by that officer had disclosed the main facts in relation to the criminal action of the clerk for doing which he received the bribe from the respondent. Where an offense of this kind is committed, each of the parties to it are in danger of having his accomplice turn state's evidence, and be thus relieved from the consequences. The respondent has secured such immunity by giving testimony against his accomplice; but this court, in applications of this character, is not so much influenced by punishment for an offense as for the honor and well being of the profession and the protection of the public in their dealings with its members. The question here is whether this respondent, having by his own statement been an accomplice in what we cannot but consider a serious crime against a court in which he was practicing and against the people of the state, should be allowed to continue in the office of an attorney and counsellor at law.

We are impelled to the conclusion that it is our duty to disbar the respondent; and it is so ordered.