In re ROUSS.

(Supreme Court, Appellate Division, First Department.   May 15, 1914.)

1. ATTORNEY AND CLIENT (§ 42*)—GROUNDS FOR SUSPENSION OR DISBARMENT—
    PROFESSIONAL MISCONDUCT.
        It was serious professional misconduct for the attorney for a policeman charged with receiving a bribe to arrange with the attorney for the person claimed to have paid the bribe for such person to leave the state, so that he could not be called as a witness, thereby preventing a successful prosecution of the policeman, whether such person had been subpoenaed as a witness or not.
        [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. § 42.*]

2. ATTORNEY AND CLIENT (§ 46*)—PROCEEDINGS TO DISCIPLINE ATTORNEY—
    DEFENSES.
        Penal Law, § 584, added to Consol. Laws, c. 40, by Laws 1910, c. 395, provides that no person shall be excused from testifying upon any investigation, proceeding, or trial for conspiracy on the ground that his testimony may tend to convict him of a crime, or subject him to a penalty, or forfeiture, but that no person shall be prosecuted or subjected to any penalty or forfeiture on account of any matter concerning which he may testify, and that no testimony so given shall be received against him upon any "criminal" investigation, proceeding, or trial.   Section 23 provides that that law does not affect civil rights or remedies; section 24, that the omission to specify any liability to any penalty or forfeiture recoverable or enforceable in any civil action, or proceeding, does not affect any right to recover or enforce it; and section 37, that the omission to specify any ground or forfeiture of a public office or other trust, or special authority, or any power to impeach, etc., any public officer or person holding any trust, appointment, or special authority, does not affect such forfeiture, or power, or any proceeding to carry into effect such impeachment, etc.   Judiciary Law (Consol. Laws, c. 30) § 88, subd. 1, as amended by Laws 1912, c. 253, authorizes the Appellate Division to admit applicants possessing the requisite character and general fitness to practice as attorneys and counselors at law, and section 88, subd. 2, as amended, authorizes it to suspend or remove any attorney guilty of professional misconduct, etc., or conduct prejudicial to the administration of justice. *Held*, that an attorney guilty of conspiracy, who voluntarily testified for the prosecution on the trial of the other conspirators, was not thereby rendered immune from discipline by the Appellate Division, based on his connection with the conspiracy, or the acts about which he testified; since an attorney is not disciplined as punishment, or as a penalty, or

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

forfeiture, but because of his lack of the character and general fitness requisite to the right to practice.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 71; Dec. Dig. § 46.*]

Proceeding against Jacob Rouss, an attorney, on charges of professional misconduct by the Association of the Bar of the City of New York. On motion to dismiss the proceeding. Motion denied, and matter referred to the official referee.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, and HOTCHKISS, JJ.

William H. Daly, of New York City, for petitioner.

Charles E. Le Barbier and Charles O. Maas, both of New York City, for respondent.

INGRAHAM, P. J. The respondent was admitted to practice in 1898, and since that time has practiced in this department. The Association of the Bar of the City of New York now charges the respondent with professional misconduct upon the following facts: On December 24, 1912, in a criminal proceeding before a magistrate of the city of New York, Eugene Fox, a member of the police force of said city, was arraigned on the charge of having feloniously received $100 from one George A. Sipp, upon the agreement that said Fox would not arrest said Sipp on a charge of keeping a disorderly house. The examination of Fox was adjourned until December 27, 1912, and on December 26, 1912, Sipp received a subpœna, which had been left at his residence, to appear as a witness before the magistrate on December 27, 1912, and thereupon the respondent, who was the attorney for Fox, entered into an arrangement with one Newell, an attorney of this court who was the attorney for Sipp, to have Sipp remain without the state until the charge against Fox should have been disposed of, and for that the respondent was to procure for Sipp a certain sum of money. In consequence of this arrangement, Sipp did not appear as a witness before the magistrate on December 27, 1912, and the proceedings were adjourned until December 30, 1912. On December 27, 1912, the respondent received $250 from Fox and paid it over to Newell to accomplish this purpose, and on December 30, 1912, Sipp did not appear before the magistrate and Fox was discharged. On the same day the respondent received from Fox the further sum of $950 which respondent paid over to Newell for the same purpose.

[1] The respondent has interposed an answer denying that he was at any time, or at any place, guilty of any misconduct in his office as an attorney and counselor at law; that he had any knowledge or information sufficient to form a belief as to whether George A. Sipp, named in the petition herein, received any subpœna which it is alleged had been left at Sipp's residence requiring him to appear as a witness; and that "on December 26, 1912, or at any other time, he, with knowledge of the facts, entered into an arrangement with Edward J. Newell to dissuade Sipp from attending before the magistrate, or to have Sipp

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

remain without the state until the charge against Fox should have been disposed of; and respondent denies that he entered into any arrangement with Edward J. Newell, or with any one else, to pay Sipp money for so doing, in consequence of which Sipp did not attend before the magistrate on December 27, 1912." He further denies that "on December 27, 1912, or at any other time, he received any money from any one, and paid over the same to any one upon any agreement that any person whatsoever should do or omit to do, anything which would operate as an obstruction of justice, or interfere with the due administration of the law."

It will be noticed that in this answer the respondent does not deny that he, the attorney for Fox, who was charged with the commission of a crime, paid money to Newell, who was the attorney for Sipp, a material witness in the case against his client Fox; that Sipp as a result of that payment failed to attend before a magistrate, and that in consequence of his failure to attend before a magistrate Fox was discharged; or that he received these two sums of money from his client Fox and paid them over to Newell, the attorney for Sipp. Nor does he deny entering into an arrangement with Newell to dissuade Sipp from attending before the magistrate. He denies that he made such an arrangement "with knowledge of the facts." But of what facts he did not have knowledge is not stated in his answer. Sipp being the person who it was alleged had bribed Fox, it is apparent that he was a material witness in the prosecution of Fox for bribery, and, so far as these proceedings are concerned, it is not very material whether Sipp had been legally subpœnaed to appear before the magistrate or not. If the respondent, being the attorney for Fox, entered into an arrangement with the attorney for Sipp by which Sipp was to leave the state so that he could not be subpœnaed, and thus a successful prosecution of Fox for bribery was prevented, and he had to do with the payment of the money which did accomplish that result, it is quite evident that he was guilty of serious professional misconduct.

[2] Subsequently four inspectors of police were indicted for a conspiracy under section 580 of the Penal Law; the conspiracy being to prevent Sipp from attending as a witness against Fox or other members of the police department of the city of New York. On the trial of that action the respondent testified as a witness for the prosecution. As an affirmative, distinct, and separate defense to the charges set forth in the petition herein, respondent further alleges:

"That he is protected and immune from prosecution and conviction upon said charges, and from any penalty or forfeiture in relation thereto by virtue of section 584 of the Penal Law of this state (added by Laws 1910, c. 395), inasmuch as the charges alleged against him in said petition involve, concern, and relate to the same subject, subjects, and subject-matter, concerning which this respondent duly testified under a subpœna as a witness for the people of the state of New York in a certain criminal action founded upon an indictment charging conspiracy under the provisions of article 54 of the Penal Law, in which Dennis Sweeney and three others were defendants, which action was tried and determined in the Supreme Court, Trial Term, Part 1, in the county of New York, in the month of May, 1913, and which is the same action referred to in the petition herein. That the respondent did not at any time, in writing or otherwise, waive the immunity accorded to him by the statute, in so testifying or disclosing any information which he possessed concerning the

transactions involved in the said criminal action against the said Dennis Sweeney et al., in the record and case above referred to."

The respondent claims that under section 584 of the Penal Law he is immune from discipline as an attorney and counselor at law because he testified in the trial of Sweeney et al. for conspiracy, and now asks the court to dismiss this proceeding upon the ground that the court is without power to discipline an attorney and counselor at law, no matter what crime he has committed, if he is called as a witness for the people to prove the crime and thus secures immunity from criminal prosecution.

Article 54 of the Penal Law deals with the crime of conspiracy. Section 580 of that article defines "conspiracy" and provides that any person guilty thereof is guilty of a misdemeanor. Subdivision 6 of that section provides that if two or more persons conspire "to commit any act injurious to the public health, to public morals, or to trade or commerce, or for the perversion or obstruction of justice, or of the due administration of the laws, each of them is guilty of a misdemeanor." Section 584 provides that:

"No person shall be excused from attending and testifying, or producing any books, papers or other documents before any court, magistrate or referee, upon any investigation, proceeding or trial, for a violation of any of the provisions of this article, upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation, proceeding or trial."

At the outset of this proceeding we are presented with the question whether the disciplinary proceedings of the Appellate Division of the Supreme Court in relation to attorneys and counselors at law are a prosecution for or subjecting to a penalty or forfeiture within the meaning of this provision of section 584 of the Penal Law. This court, in the Matter of Boland, 127 App. Div. 746, 111 N. Y. Supp. 932, had this question presented to it. In that case the respondent was charged with having bribed an assistant clerk of the Court of Special Sessions to so act in his official duties as to secure the release without trial of a person charged with a crime for whom the respondent appeared as counsel. In answer to the respondent's contention in that case, this court said:

"We are earnestly asked by the learned counsel for the respondent to relieve the respondent from the extreme penalty because of the fact that he made a disclosure of his connection with this crime to the district attorney and made a deposition to be used in a criminal proceeding against the clerk. But there is no claim that the respondent made any such disclosure until after the facts had come to the knowledge of the district attorney and an investigation by that officer had disclosed the main facts in relation to the criminal action of the clerk for doing which he received the bribe from the respondent. Where an offense of this kind is committed, each of the parties to it are in danger of having his accomplice turn state's evidence and be thus relieved from the consequences. The respondent has secured such immunity by giving testimony against his accomplice; but the court, in applications of this character, is not

so much influenced by punishment for an offense as for the honor and well-being of the profession and the protection of the public in their dealings with its members. The question here is whether this respondent, having by his own statement been an accomplice in what we cannot but consider a serious crime against a court in which he was practicing and against the people of the state, should be allowed to continue in the office of an attorney and counselor at law."

The client of respondent in this proceeding was charged with a criminal offense. He was to be examined before a magistrate. The respondent procured and delivered to the attorney for the principal witness against his client $1,200 in money. As the result of such payment, that witness left the state so that the prosecuting officers were unable to procure his attendance at the examination of the respondent's client. As a further result, the prosecution fell through, and the respondent's client was discharged. Such an act clearly tended to pervert or obstruct the administration of justice and the due administration of the law. An attorney and counselor at law who has committed such an act has violated the oath which he took upon his admission to practice, "to faithfully perform his duties as an attorney and counselor at law," and is guilty of professional misconduct and conduct prejudicial to the administration of justice.

To extend the effect of the provisions of section 584 of the Penal Law to such a case as this would enable any attorney to avoid the consequences of his act by procuring himself to be called as a witness upon some "investigation, proceeding or trial," for a violation of the provisions of the article of the Penal Law. It would only be necessary to have some charge made before a magistrate, have the attorney testify in that proceeding, and thus prevent this court from disbarring the attorney, no matter how heinous his offense or how successfully he had been able to subvert the law and prevent its due administration.

The provision of law upon which the respondent relies is a section of the Penal Law of the state of New York. It was enacted as chapter 40 of the Consolidated Laws of the state of New York; chapter 88 of the Laws of 1909. Section 23 of that act provides:

"The provisions of this chapter are not to be deemed to affect any civil rights or remedies existing at the time when this chapter takes effect, by virtue of the common law or of any provision of statute."

Section 24 provides:

"The omission to specify or affirm in this chapter any liability to any damages, penalty, forfeiture or other remedy, imposed by law, and allowed to be recovered or enforced in any civil action, or proceeding, for any act or omission declared punishable herein, does not affect any right to recover or enforce the same."

Section 37 provides:

"The omission to specify or affirm in this chapter any ground or forfeiture of a public office or other trust or special authority conferred by law, or any power conferred by law to impeach, remove, depose or suspend any public officer or other person holding any trust, appointment or other special authority conferred by law, does not affect such forfeiture or power, or any proceeding authorized by law to carry into effect such impeachment, removal, deposition or suspension."

We thus have stated the general objects for which the Penal Law was enacted and the limitations upon its provisions so far as it affects proceedings other than those mentioned in it.

Section 88 of the Judiciary Law (Consol. Laws, c. 30) was amended by chapter 253 of the Laws of 1912. Subdivision 1, as amended, provides for the admission to practice of attorneys and counselors at law. It authorizes the Appellate Division, if it shall be satisfied that an applicant possesses the character and general fitness requisite for an attorney and counselor at law, to admit him to practice as such attorney and counselor at law in all the courts of this state. Subdivision 2, as amended, provides:

"The Supreme Court shall have power and control over attorneys and counselors at law, and the Appellate Division * * * in each department is authorized to censure, suspend from practice or remove from office any attorney and counselor at law admitted to practice as such who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice; and the Appellate Division of the Supreme Court is hereby authorized to revoke such admission for any misrepresentation or suppression of any information in connection with the application for admission to practice."

Thus the admission of attorneys and counselors at law to practice, the censure, suspension from practice, and removal from office, depend not upon the commission of a crime, but upon the character of the applicant for admission and the method in which the attorney and counselor at law has performed his duties after his admission. If he is not of the character and general fitness required for an attorney and counselor at law, he is not to be admitted. If, after his admission, it appears that he is guilty of professional misconduct, malpractice, fraud, deceit, crime, or misdemeanor, or any conduct prejudicial to the administration of justice, he is to be disciplined, not as a penalty or forfeiture, not as punishment for crime or professional misconduct, but for the welfare of the profession and for the protection of the public in dealing with its members. I do not think it can be fairly said that an attorney who has committed such acts, or has so conducted his professional relations, as to show himself to be unfit to be a member of the profession, to be intrusted with the confidence of the courts and his clients, is subject to a penalty or forfeiture, because the court is convinced that he has become so depraved, and has so violated his oath of duty, that he is no longer to be trusted with the performance of the duties which devolve upon an attorney and counselor at law. He has ceased to be a competent person to perform the duties of his office. He has ceased to have the character and general fitness that justify the court in continuing him as an attorney and counselor at law. Thus it is that it becomes the duty of the court to take from him the license and rights that it has given to him to continue to exercise the functions of an attorney and counselor at law. That a member of the bar who has deliberately and intentionally taken part in a conspiracy to induce witnesses who are material to the successful prosecution of crime to leave the state, and thus defeat the enforcement of the criminal law, should be immune from professional discipline because he has turned against his accomplices and endeavored to secure their conviction,

seems to be such a monstrous proposition that I cannot think that, by the use of these general terms in a statute giving immunity to criminals when they have testified against their accomplices, the Legislature could have intended to have accomplished that result.

If the respondent's position is correct, any public officer would be immune from impeachment or removal for any offense against the people of the state, if he had testified in any investigation or proceeding as to the fact of his connection with the crime. Thus, if an officer had taken part in such a conspiracy which had for its object to influence him in the performance of his duties, and had testified in some investigation or proceeding, admitting that he did accept a bribe, he would be immune from any impeachment or removal although a self-confessed bribed official. Giving this section the broad construction that is claimed, it does not appear that it would be essential that the officer claiming such immunity should testify on behalf of the people or the prosecution. It would be sufficient if he testified in an action, proceeding, or investigation. That this could not have been within the contemplation of the Legislature when it enacted this section is apparent. The provision of section 37 of the Penal Law seems to enforce this intention of the Legislature, for therein it is expressly provided:

"The omission to specify or affirm in this chapter any ground or forfeiture of a public office or other trust or special authority conferred by law, or any power conferred by law to impeach, remove, depose or suspend any public officer or other person holding any trust, appointment or other special authority conferred by law, does not affect such forfeiture or power, or any proceeding authorized by law to carry into effect such impeachment, removal, deposition or suspension."

The intention of the Legislature by this provision was to enable the prosecuting officer, when the crime of conspiracy was being investigated, to compel the witnesses who had been engaged in such a conspiracy to testify against their accomplices, and the immunity to which such witnesses were to be entitled was from the punishment, penalty, or forfeiture, which would follow from the commission of the crime charged in the proceedings in which they were called upon to testify. The fact that a person engaged in such a conspiracy should earn immunity by his turning against his co-conspirators would not at all affect the character of the act of which he had been guilty, or redeem the character of the individual from the stigma of having been concerned in such a transaction. When the right to continue to practice law depends upon the character of those intrusted with its responsibilities, it certainly cannot be said that, when the loss of the requisite character has been established, the disbarment of the attorney is a penalty or forfeiture within the meaning of the term as used in the administration of the criminal law. This seems to be emphasized by the fact that when the section provided for the use of the testimony given in the investigation, proceedings, or trial for violation of any of the provisions of the article, it was restricted to a "criminal investigation, proceeding and trial," and not to one which has for its object the removal of an attorney at law. The mere fact that a person had tes-

tified upon the trial of his accomplices for a violation of the article of the Penal Law in question would not make him immune from an investigation or proceeding to ascertain his character and general fitness to fill a particular office, if in that proceeding there was no provision preventing the testimony given from being used against him. If by giving such testimony he becomes immune from all discipline as an attorney at law, the prohibition against the use of the testimony given against him would not have been confined to the trial in any other criminal investigation, proceeding or trial.

This same phrase is used in section 837 of the Code of Civil Procedure, which provides:

"A competent witness shall not be excused from answering a relevant question, on the ground only that the answer may tend to establish the fact, that he owes a debt, or is otherwise subject to a civil suit. But this provision does not require a witness to give an answer, which will tend to accuse himself of a crime or misdemeanor or to expose him to a penalty or forfeiture; nor does it vary any other rule, respecting the examination of a witness."

I should have no doubt on this subject were it not for an observation in the opinion In the Matter of Kaffenburgh, 188 N. Y. 49, 80 N. E. 570. That was a proceeding against an attorney for disbarment, and a charge was made that was not sustained by this court in disbarring the respondent, that the respondent had committed an offense by having refused to answer questions when called as a witness on the trial of one Hummel for conspiracy, which tended to elicit his connection with the commission of the crime charged, and that he refused to answer each and all of the questions as to his personal transactions on the ground that his answers might tend to incriminate him, and that in so refusing he was intentionally deceiving the court or else his connection with these matters was criminal. It was said in the opinion in the Court of Appeals that the respondent "had the right to refrain from answering any question which might form the basis of or lead to the prosecution of himself for a forfeiture of his office of attorney and counselor at law." The question presented in that case was as to the right of a witness to refuse to answer under the exception contained in section 837 of the Code of Civil Procedure, and it was held that taking such an objection to a question asked him as a witness on a criminal trial was neither an admission of crime nor a deception of the court which would justify disbarment. But the court had not before it for construction this provision of the Penal Law, nor was it called upon to construe the immunity which was given to a witness who appeared and without objection answered questions in relation to a conspiracy in which he was a party and about which he testified.

In the Kaffenburgh Case, supra, the respondent was disbarred upon the petition and answer. There was no evidence taken as to the charge nor as to the circumstances under which the respondent refused to testify. It seems to me that a very different construction should be given to these words "penalty or forfeiture," when used in a criminal statute defining crimes and their punishment, and when used in a Code of Civil Procedure which simply regulates the testimony of witnesses in a civil proceeding. This construction which I have placed upon the

provision of the Penal Law is based upon what appears to be the object of the proceedings and, to my mind, what is its clear intent. I am not prepared to say that this immunity from prosecution would be confined to strictly criminal proceedings, for there might be some cases where civil penalty was imposed upon a participant in such a conspiracy, from which his testimony for the people would render him immune. It certainly would not be a defense to a civil action to recover damages caused by the conspiracy to which the defendant had testified, nor does it follow that the court could have compelled the respondent to testify if he had taken the objection that his testimony would render him amenable to discipline as an attorney at law. He appeared as a witness, answered the questions asked without objection, and is only entitled to the immunity which is expressly granted by section 584 of the Penal Law. But it seems to me clear that section 584 of the Penal Law was not intended and cannot be so used as to render an attorney and counselor at law immune from any discipline by the Supreme Court, under section 88 of the Judiciary Law, as amended, to which attention has been called, in consequence of his connection with the conspiracy or acts about which he has testified. This is also the view of this question taken by this court in the Matter of Spencer, 137 App. Div. 330, 122 N. Y. Supp. 190, and his disbarment (143 App. Div. 229, 128 N. Y. Supp. 168), was affirmed in the Court of Appeals (203 N. Y. 613, 96 N. E. 1131); and by the courts of other states (Matter of Thatcher, 83 Ohio St. 246, 93 N. E. 895, Ann. Cas. 1912A, 810; Boston Association v. Casey, 211 Mass. 187, 97 N. E. 751, 39 L. R. A. [N. S.] 116, Ann. Cas. 1913A, 1226).

I think therefore the motion to dismiss the proceedings must be denied, and the matter referred to the official referee. All concur.