(169 App. Div. 629)

## In re ROUSS.

(Supreme Court, Appellate Division, First Department. November 5, 1915.)

ATTORNEY AND CLIENT ☞42—DISBARMENT—BRIBING WITNESS TO REMAIN OUT OF JURISDICTION.

    Respondent, counsel for defendant in a criminal proceeding wherein one S., an important, if not an actually necessary, witness for the people, had either been subpœnaed to attend, or knew that he would be wanted as a witness, who with knowledge of such facts reported a suggestion of S.'s attorney that he wished to remain without the jurisdiction, but had no funds to do so, obtained money from his client and gave it to S., through his attorney, whereupon S. remained without the state, in consequence of which the proceeding against his client was dismissed, was guilty of serious professional misconduct, and should be disbarred.

    [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. ☞42.]

In the matter of Jacob Rouss. Application for disbarment on the report of an official referee upon charges against respondent, an attorney and counselor at law, for professional misconduct. Respondent disbarred.

See, also, 162 App. Div. 496, 147 N. Y. Supp. 713.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, and DOWLING, JJ.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Einar Chrystie, of New York City (Hugh A. Bayne, of New York City, of counsel), for petitioner.

Charles E. Le Barbier, of New York City, for respondent.

PER CURIAM. Briefly summarized, the charge preferred against the respondent by the Association of the Bar of the City of New York is that he was guilty of professional misconduct in this: That he was of counsel for one Eugene Fox, who was defendant in a criminal proceeding before a city magistrate; that one George Sipp was an important, if not actually necessary, witness for the people in that proceeding, and had been either subpœnaed to attend at the hearing, or an attempt had been made to serve him with a subpœna; and that respondent, with knowledge of the facts, paid money to said Sipp to induce him to remain without the state and to refrain from appearing before the magistrate, in consequence of which the criminal complaint then pending against said Fox was dismissed.

In December, 1912, a committee of the board of aldermen of the city of New York were engaged in making an investigation of the police department. On December 19, 1912, George Sipp testified before that committee that Fox had collected money from him to be paid to Police Captain Walsh for "protection" in running a disorderly house. Respondent read this testimony in the newspapers, and thus knew that Sipp would be a dangerous witness in any criminal proceeding that might be instituted against Fox. He thereupon procured himself or his firm to be retained by Fox, whom he had not previously known. On December 24, 1912, Fox was arrested, and respondent appeared for him in the Magistrate's Court, and from what took place there in respondent's presence it was evident that Sipp's presence was greatly desired by the people as an important witness against Fox. The hearing was set for December 27, 1912. Between December 24th and December 27th an attempt was made to serve a subpœna upon Sipp, and one was left at his house. It is not altogether clear whether or not he actually received the subpœna, and it is not material in this proceeding whether he did or not. He certainly knew that he would be wanted as a witness. Sipp's attorney was one Edward J. Newell, who saw respondent on December 26th, and stated to him that Sipp wished to remain without the jurisdiction, so that he could not be called as a witness, but that, as he had not sufficient funds, he could not do so, unless assisted. Newell suggested that his absence would greatly benefit Captain Walsh, who was seemingly implicated by Sipp's testimony. Evidently his absence would also benefit Fox, and of course respondent realized this. Newell's proposition was that Walsh should furnish the necessary money. Newell did not know Walsh, nor, so far as it appears, did respondent; but he communicated Newell's suggestion to Fox. Sipp left the jurisdiction on December 26, 1912, and on December 27th the hearing was adjourned until the 30th on account of Sipp's absence. Fox procured $250, which he gave to respondent, who gave it to Newell, Sipp's attorney, in Jersey City, and Newell gave it to Sipp. Later $950 was similarly received and disposed of. At the adjourned hearing, Sipp being still absent, Fox was discharged.

Later Sipp was arrested in Jersey City in an extradition proceeding and voluntarily returned to New York. He testified before the grand jury, and Fox was indicted and pleaded guilty of bribery. In April and May four inspectors of police, who as it was alleged were involved in obtaining illicit revenue from "protection" of unlawful business, were tried and found guilty of obstructing the course of justice by suppressing the testimony of Sipp and his son relative to the bribe received by Fox. On this trial the respondent testified for the people, as did Fox and Newell. Of these facts there is no question. It is true they rest largely upon the evidence of discredited witnesses such as Howard, Sipp, Fox, and Newell; but their testimony is much strengthened by the evidence given by respondent upon the trial of the police inspectors.

The respondent naturally seeks to explain and excuse his actions in various ways; but, as is justly remarked by the official referee, "in the ultimate analysis there is but one conclusion to be drawn." Respondent's interest was to protect Fox, his client; but Fox and Walsh were so intimately connected with regard to the matters to which Sipp could testify that the evidence of Sipp would be damaging to both, and his absence as a witness beneficial to both. It was therefore quite as much to Fox's interest as it was to Walsh's that Sipp should be kept out of the jurisdiction. There can be no reasonable doubt that respondent, realizing how dangerous a witness Sipp would be against Fox, as well as against Walsh, was actively and consciously instrumental in transmitting to Sipp money furnished by Fox or Walsh, or both of them, for the purpose of persuading and enabling Sipp to remain out of the jurisdiction, in order that he might not be available as a witness for the people in any criminal proceeding against Fox. It may be that Sipp had a personal reason for going away, that he feared a police consiracy, or unenviable notoriety; but the fact remains that respondent was distinctly informed that he could not afford to stay away unless supplied with funds, and that respondent actively aided in supplying him with the funds he demanded. In fact Sipp did remain away until forced to return by the extradition proceedings. It would be taxing our credulity too far to ask us to believe that it was by a mere coincidence that Sipp left the state of New York at this particular time for his health, or that respondent believed that he acted merely as a conduit for a friendly loan from Walsh to Sipp.

There can be no doubt upon the evidence that respondent was a party to a scheme to bribe Sipp to remain without the jurisdiction, to the end that the people might not be able to use his testimony in the prosecution of Fox. That such conduct constituted professional misconduct of the most serious nature requires no demonstration.

There is no other question in the case which requires discussion. The contention that respondent, by testifying in the criminal action against the police inspectors, earned an immunity which should protect him in a proceeding of this character, was passed upon and disposed of when the matter was referred to the official referree. Matter of Rouss, 162 App. Div. 496, 147 N. Y. Supp. 713.

The referee's report is confirmed, and the respondent disbarred. Settle order on notice.